******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

D'AURIA, J., with whom PALMER, J., joins, concurring in part and dissenting in part. I agree with part I A and B of the majority opinion but dissent from part II. Although the court's holdings today in both part I A and B establish or clarify the law in a confusing area of the law, I ultimately agree that the majority properly applies our law and that the defendants' appeal from the judgment on the jury's verdict was untimely. The Appellate Court therefore properly granted the motion filed by the plaintiff Marie Leoma[1] to dismiss that part of the appeal that "relates to the October 28, 2016 judgment . . . ." I disagree with part II of the majority opinion, however, which holds that the Appellate Court properly denied the motion for permission to file a late appeal, which was filed by the defendants, OB-GYN Services, P.C., and Brenda Gilmore. Instead, I believe that the defendants' appeal should be heard on its merits.

The majority holds in part I A and B of its opinion that, after a favorable jury verdict, a plaintiff's motion for interest pursuant to both General Statutes §§ 52-192a (c) (prejudgment offer of compromise interest) and 37-3b (postjudgment interest) neither delays entry of a final judgment for purposes of appeal nor tolls the appeal period pursuant to Practice Book § 63-1 (c) (1) (motion that, "if granted, would render a judgment, decision or acceptance of the verdict ineffective," creates a new appeal period). Given the circumstances of this case and the confusion that preceded today's decision in this area of appellate practice, I believe that the Appellate Court incorrectly determined that the defendants lacked good cause to justify filing a late appeal. I reach this conclusion fully aware of the deferential standard of review we apply to such rulings of the Appellate Court. Our case law commands that, to call this ruling an error, we must conclude that the Appellate Court abused its discretion. In my view, we should make clear—to ourselves and to the Appellate Court—that, when exercising discretion to accept a late appeal, an appellate court must consider whether there exists an objectively reasonable basis for confusion, uncertainty or mistake about when the appeal period has run or has been tolled. If so, this factor should weigh heavily—if not dispositively—in the balance in determining whether to accept the late appeal. If objectively reasonable good faith confusion exists, and no other factors weigh against granting the motion to file a late appeal—such as prejudice or undue delay beyond the delay normally associated with a timely filed appeal—in my view, an appellate court abuses its discretion by denying a party permission to file a late appeal. For example, if reasonable good faith confusion exists and the only factor weighing against granting

permission is docket control, I do not believe an appellate court properly exercises its discretion by denying permission to file a late appeal. Punishing a party by disallowing its appeal from being heard is a drastic sanction when—as in a case like the present one—there was not clear guidance for determining an appeal deadline. Applying a proper standard, I believe that, under the circumstances of this case, it was an abuse of discretion not to grant a motion to file a late appeal.

I

The majority and I do not disagree on the material facts and procedural history that the record discloses. On May 16, 2013, the plaintiff filed an offer of compromise to settle her medical malpractice claim against the defendants for $2 million. The defendants did not accept. On October 28, 2016, the jury returned a $4.2 million verdict in favor of the plaintiff. The trial court accepted the verdict that same day.

On November 8, 2016, during the twenty day appeal period, the plaintiff filed a motion with the trial court seeking offer of compromise interest pursuant to § 52-192a (c) and postjudgment interest pursuant to § 37-3b. No other entries appear on the electronic docket for the next fifteen days: no party filed a pleading, and the court undertook no action. In the plaintiff's view, the defendants would have had to file any appeal by November 17, 2016.

On November 23, 2016—the day before Thanksgiving—the trial court issued an order directing the parties to appear on December 8, 2016, for argument on the plaintiff's motion. The following Monday, November 28, 2016, an entry appeared on the docket, stating, "judgment on verdict for plaintiff."

According to the plaintiff's counsel, the issue the court was to address at the December 8, 2016 hearing was: "[O]n what date does offer of compromise interest stop and does postjudgment interest begin?" Each statute establishes a different interest rate and provides alternate dates for when each type of interest *begins*. However, § 52-192a (c) does not provide for when prejudgment offer of compromise interest *ends*, including in cases in which both types of interest are awarded.[2]

On December 12, 2016, the trial court issued a decision concluding that the "end date" for calculating offer of compromise interest was the date judgment entered, which it clarified was October 28, 2016, the date the verdict was accepted.[3] This meant that *no* interest would accrue for twenty days after the verdict. Postjudgment interest under § 37-3b would then begin to accrue if the defendants did not satisfy the judgment.[4]

On December 16, 2016, four days after the trial court's ruling on interest, the defendants appealed to the Appellate Court, challenging both that ruling and the jury's verdict.[5] On December 22, 2016, the plaintiff moved to

dismiss the defendants' appeal from the October 28, 2016 judgment on the jury verdict. On December 30, 2016, the defendants opposed the motion and, at the same time, moved the Appellate Court for permission to file a late appeal, pursuant to Practice Book § 60-2 (5).

On February 8, 2017, the Appellate Court granted the plaintiff's motion to dismiss the defendants' appeal, "as it relates to the October 28, 2016 judgment," and denied the defendants' motion for permission to file a late appeal. The defendants filed a petition for certification to appeal with this court, which we dismissed because their appeal to the Appellate Court had not been finally determined. See General Statutes § 51-197f.

The defendants' appeal concerning the trial court's December 16, 2016 interest determinations proceeded, and the Appellate Court affirmed the judgment of the trial court. *Georges* v. *OB-GYN Services*, *P.C.*, 182 Conn. App. 901, 184 A.3d 840 (2018). The defendants then filed another petition for certification to appeal from the Appellate Court's dismissal of their previous appeal, which we granted. *Georges* v. *OB-GYN Services*, *P.C.*, 330 Conn. 905, 192 A.3d 426 (2018).

II

The Appellate Court is indisputably the "workhorse" of our appellate system, administering and adjudicating more than 450 appeals annually. See W. Horton & K. Bartschi, "2016 Appellate Review," 90 Conn. B.J. 221, 231 (2017). Without sacrificing fairness, our Appellate Court colleagues handle hundreds more appeals annually than this court, with a dispatch we aspire to emulate. "[A]ppellate tribunals must exercise their discretion to determine whether a late appeal should be permitted," and "we review the Appellate Court's decision under the abuse of discretion standard." (Internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, 263 Conn. 204, 210, 820 A.2d 224 (2003). I take seriously both the size of the Appellate Court's caseload and this deferential standard of review. Thus, I would ordinarily be reluctant to conclude that a coordinate appellate tribunal has abused its discretion in enforcing rules regarding the timeliness for taking appeals. Several observations about this standard of review are in order, however, as I undertake to apply it.

First, although we have acknowledged that the Appellate Court has "broad authority to manage its docket"; id., 212; we have provided very little guidance on how that court should go about exercising that discretion, including when it applies the very same rules we apply in determining whether to permit a late filing. We have indicated that an appellate court appropriately considers a "variety of factors," including, but not limited to, the reason for the late filing, the nature of the underlying case, whether the application for permission is opposed,

and the interests of judicial economy. See *Janulawicz* v. *Commissioner of Correction*, 310 Conn. 265, 274, 77 A.3d 113 (2013) (application for permission to file late petition for certification to appeal); see also *Ramos* v. *Commissioner of Correction*, 248 Conn. 52, 61–62, 727 A.2d 213 (1999) (petitioner's late appeal fell within Appellate Court's policy of permitting such appeals only in exceptional circumstances). Consistent with these factors, it is also appropriate to consider the extent of any prejudice to the objecting party. See *Meribear Productions, Inc.* v. *Frank*, 193 Conn. App. 598, 606, 219 A.3d 973 (2019) ("allowing the defendants to file a late appeal will not prejudice the plaintiff"); see also *Janulawicz* v. *Commissioner of Correction*, supra, 274–75 ("because there frequently is no material prejudice arising from the late filing, as we have indicated, we often agree to consider the merits of untimely petitions otherwise in compliance with our rules of practice"). Beyond that, we have provided almost no direction, including in situations in which the timeliness of the filing of an appeal is subject to legitimate question.

It is true that we have stated that the Appellate Court "legitimately has adopted a policy of docket control 'that, in other than exceptional cases, the need to address cases that were filed timely outweighs the need to permit appeals that are in fact late.' " *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 212, quoting *Ramos* v. *Commissioner of Correction*, supra, 248 Conn. 61. We have also recognized, however, that "[j]udicial discretion . . . is always a legal discretion, exercised according to the recognized principles of equity." (Internal quotation marks omitted.) *Burton* v. *Browd*, 258 Conn. 566, 569–70, 783 A.2d 457 (2001). This discretion "should be exercised in conformity with the spirit of the law and should not impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) Id., 570. A ruling denying permission to file a late appeal forecloses entirely a party's statutory right to appellate review. We have therefore been careful to note that deference to the Appellate Court "does not mean . . . that any exercise of discretion by the Appellate Court in denying a late appeal will find a welcoming eye in this court." *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 214. I interpret this to mean that we can and should construe and apply our rules—including rules concerning late appeals—to provide the Appellate Court with appropriate guidance on how to exercise its discretion.

Second, unlike the situation in most instances of a *trial court's* exercise of discretion, we have very little in the record explaining the basis of the Appellate Court's ruling. Other than the cryptic orders granting the plaintiff's motion to dismiss (in part) and denying the defendants' motion to permit a late appeal, we do not know precisely how the Appellate Court exercised its discretion, including which of the previous listed factors it

considered, how close it found the question or whether it would have permitted a late appeal if any factors were different, such as if the defendants had recognized their mistake earlier and appealed more promptly. I intend no criticism by this observation. Both this court and the Appellate Court routinely and appropriately issue such orders without explanation. Cf. *Meribear Productions, Inc.* v. *Frank*, supra, 193 Conn. App. 599, 602 (published opinion in which Appellate Court exercised discretion to grant, nunc pro tunc, defendants' motion to file late appeal and denying plaintiff's motion to dismiss where defendants improperly filed appeal too early when judgment was not final, which became apparent only after Supreme Court review). However, given that appellate courts must consider a "variety of factors" when ruling on motions to accept late appeals; *Janulawicz* v. *Commissioner of Correction*, supra, 310 Conn. 274; the absence of any explanation for the ruling, in my view, makes entirely deferential review problematic. Said another way, I am reluctant to defer reflexively to discretion exercised in a fashion that is not manifest.[6] Cf. *State* v. *Fernando V.*, 331 Conn. 201, 213, 202 A.3d 350 (2019) (declining to rule on claim advanced, for first time, on appeal seeking to sustain evidentiary objection at trial because "[w]e cannot determine whether the trial court abused an exercise of discretion that it neither made nor was asked to make").

Finally, and relatedly, unlike when we review a discretionary *trial court* ruling,[7] our review of this discretionary *Appellate Court* ruling does not involve an exercise of discretion entirely unique to the Appellate Court. By that I mean that the deference we afford to the Appellate Court when ruling on a motion to permit a late appeal is not a function of our being ill-equipped to rule on such motions. In fact, this court also rules on motions to dismiss appeals and motions for permission to file late appeals. See, e.g., *Francis* v. *Fonfara*, 303 Conn. 292, 295 n.6, 33 A.3d 185 (2012) (motion for permission to file late writ of error granted after adverse trial court ruling). Rather, the deference we afford our fellow tribunal in the appellate system is rooted in the fact that it handles a greater volume of appeals than this court. Most—but not all—appeals are filed first in the Appellate Court. See General Statutes §§ 51-197a and 51-199. Therefore, it is one thing when reviewing a *trial court's* discretionary ruling to recite the familiar refrain that, on appeal, "the question is not whether any one of us, *had we been sitting as the trial judge*, would have exercised our discretion differently." (Emphasis added; internal quotation marks omitted.) *State* v. *Cancel*, 275 Conn. 1, 18, 878 A.2d 1103 (2005). However, I find it harder to disclaim any obligation to scrutinize with some rigor the denial of a motion to permit a late appeal because this court is called on to make similar rulings (albeit not as often). Under these circumstances, one appellate court applying different

criteria than another in assessing a late filed appeal borders on the arbitrary.

Our rules require that a party seeking permission to file a late appeal must show good cause for the late filing. See Practice Book § 60-2 (5). An appellate court will customarily allow a late filing if "unusual circumstances" or "exceptional cases" justify granting such permission. (Internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 212, 213. Consistent with our case law and our rules of practice, I would hold that an objectively reasonable basis for confusion, uncertainty or mistake about when the appeal period has run, or whether the appeal period has been tolled, must weigh heavily in an appellate court's determination of whether "good cause" justifies permitting a late appeal. Cf. *Morici* v. *Jarvie*, 136 Conn. 370, 371, 71 A.2d 556 (1950) ("[w]here counsel mistakenly but in good faith proceed on the assumption that a finding is necessary, file a request for a finding and draft finding and, under the second provision in [former Practice Book] § 341, do not file assignments of error with the appeal, it certainly would not ordinarily be just to preclude them from filing assignments when they discover that a finding is not necessary, and thus prevent them from prosecuting an appeal"). Although I agree that a delinquent appellant should not "obtain the benefit of the appellate process after contributing to its delay, to the detriment of others with appeals pending who have complied with the rules and have a right to have their appeals determined expeditiously"; (internal quotation marks omitted) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 213; I do not agree that an objectively reasonable, good faith mistake of law does not constitute good cause in the absence of countervailing factors. If objectively reasonable confusion exists, and no other factor weighs against granting permission to file a late appeal, such as prejudice or undue delay beyond the delay normally associated with a timely filed appeal—in my view, docket control alone does not outweigh this good cause. See footnote 14 of this opinion.

In the present case, in which no prejudice or allegation of undue delay has been raised, beyond the delay normally associated with a timely filed appeal while postjudgment interest is running, and the granting of the appeal would not have caused an undue delay, the Appellate Court either did not consider the defendants' objectively reasonable good faith confusion or determined that the defendants' confusion was either unreasonable or outweighed by the need for docket control. Either way, I conclude on this record that the Appellate Court abused its discretion by denying the defendants permission to file a late appeal.

## III

The benchmark against which the majority measures

the Appellate Court's denial of the defendants' late appeal is this court's unforgiving decision in *Alliance Partners, Inc.*, a case I find entirely distinguishable. The plaintiff filed its appeal in *Alliance Partners, Inc.*, a single day late. *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 207. Upon the defendant's motion, the Appellate Court dismissed the appeal and denied the plaintiff permission to file a late appeal. Id. The plaintiff argued that its one day delay in filing the appeal arose from a misunderstanding of law, namely, the plaintiff's counsel "[mis]read [Practice Book § 63-2] . . . to not include the first and last days of filing for purposes of counting the [twenty day] appeal period. Consequently, [the plaintiff] filed [its] appeal on the [twenty-first] day and not the twentieth day." (Internal quotation marks omitted.) Id., 208.

Central to the court's reasoning rejecting the plaintiff's argument in *Alliance Partners, Inc.*, was that it could "perceive no reasonable basis" for any "assertion of confusion" about the last day for filing an appeal, given that Practice Book 63-2 provides in relevant part: "[I]n determining the last day for filing any [documents] . . . [the] last day shall, and the first day shall not, be counted." (Internal quotation marks omitted.) Id., 211. If there were any doubt, the court noted, consulting "an authoritative treatise on our appellate practice" would have dispelled any confusion, as it "made the same point in clear language. 'In determining the last day for filing papers, the last day is included and the first day is not.' " Id., 212, quoting C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 4.11, p. 153.

In contrast to the situation in *Alliance Partners, Inc.*, the events that transpired in the present case after the jury's verdict were, in my view, susceptible to reasonable confusion sufficient to constitute "good cause" and to justify the defendants' late appeal. Specifically, as the plaintiff's counsel acknowledged at oral argument before this court, a motion for offer of compromise interest need not be filed during the appeal period and is most often filed after the appeal period. In fact, it is unclear that any motion needs to be filed at all; instead, the court adds offer of compromise interest as a ministerial matter.[8] An arguably unnecessary motion, filed during the appeal period and raising new issues concerning calculation of interest, can be viewed objectively as adding confusion to whether the judgment was final. As for postjudgment interest, no appellate court has definitively determined whether the 1997 amendment to § 37-3b[9] makes 10 percent interest in all ways mandatory or whether the trial court retains some discretion over the extent of an award of interest.

In the present case, the plaintiff—the prevailing party—filed a motion seeking awards of *both* types of interest, did so within the twenty day appeal period,

and the trial court set the motion down for a hearing. The question posed by the defendants' appeal is whether that motion either (1) delayed the entry of a final judgment, or (2) tolled the appeal period under Practice Book § 63-1 (c).

A

Ultimately, I agree with the majority's well reasoned opinion that a motion for offer of compromise interest neither delays entry of a final judgment nor tolls the appeal period. Specifically, I agree with the majority that offer of compromise interest "does not entail any examination of matters encompassed within the merits of the underlying action" and that interest under § 52-192a (c) is "collateral to the judgment and does not affect its finality for purposes of appeal." We have, at least in dictum, said as much in *Earlington* v. *Anastasi*, 293 Conn. 194, 196 n.3, 976 A.2d 689 (2009). I also agree that a motion for offer of compromise interest is not one that, "if granted, would render the judgment, decision or acceptance of the verdict ineffective"; Practice Book § 63-1 (c) (1); and a trial court's ruling on such a motion therefore does not create a new appeal period. However, as it concerns the defendants' motion for permission to file a late appeal in the present case, two things are true.

First, on the issue of whether a motion for offer of compromise interest tolls the appeal period under Practice Book 63-1 (c), the majority candidly admits that "our research has not revealed any pertinent Connecticut appellate authority . . . ." In fact, to conclude that the plaintiff's motion did not toll the appeal period requires rejecting the application of one of our cases, *In re Haley B.*, 262 Conn. 406, 815 A.2d 113 (2003), and relying solely on the "persuasive" reasoning of a United States Supreme Court case, *Buchanan* v. *Stanships, Inc.*, 485 U.S. 265, 108 S. Ct. 1130, 99 L. Ed. 2d 289 (1988).[10] Moreover, unlike the situation in *Alliance Partners, Inc.*, resort to the rules of practice or a pertinent treatise would not have authoritatively resolved the question. As one prominent treatise states, "[t]his area of the law is like threading a needle." W. Horton & K. Bartschi, Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2019–2020 Ed.) § 61-1, p. 84, authors' comments.

Second, the plaintiff's motion sought *more* than just offer of compromise interest. It also sought postjudgment interest pursuant to § 37-3b. There is also no binding authority on whether a motion for postjudgment interest remains in any way discretionary (at least as to the rate of interest) or delays entry of a final judgment.[11] Cf. *Nolan* v. *Milford*, 86 Conn. App. 817, 819, 862 A.2d 879 (2005) (judgment was not final for purpose of appeal until rate of prejudgment interest was determined when General Statutes § 37-3a provided for interest rate of "ten per cent a year, and no more," because

trial court retained discretion to determine interest rate). Although I agree with the majority that a motion for postjudgment interest does not alter the judgment under Practice Book § 63-1 (c) (1), I do not believe that this was clear at the time of the plaintiff's postverdict motion in the present case.

But even more particularly—and this is the real final judgment brainteaser—the plaintiff's motion asked the trial court to determine on what date offer of compromise interest at 8 percent (under § 52-192a (c)) ended and postjudgment interest at 10 percent (under § 37-3b) began. At the hearing on this motion, the plaintiff's counsel explained that, because the plaintiff sought awards of both types of interest, "the debate . . . is, on what date does offer of compromise interest stop and does postjudgment interest begin." The trial court decided the question adversely to the plaintiff's position. See footnote 4 of this opinion. There is at least a straight-faced argument that, until the trial court resolved this issue, which would affect what interest rate applied, a final judgment had not been rendered, especially as it was unclear whether the court retained any discretion in determining the postjudgment rate of interest. Cf. *Nolan* v. *Milford*, supra, 86 Conn. App. 819 (judgment is not final until rate of prejudgment interest under § 37-3a is determined);[12] see also footnote 11 of this opinion.

In fact, the plaintiff's motion itself suggests that the plaintiff might have believed (mistakenly, the majority now makes clear) that judgment had not yet been rendered. Specifically, the plaintiff argued that § 52-192a (c) directs the court to add 8 percent annual interest from the date the complaint was filed "to ninety days following the rendering of the verdict, *which occurs on January 26, 2017*." (Emphasis added.) The quoted language concerning "ninety days following" the verdict appears not in § 52-192a, but in § 37-3b, which provides for the recovery of 10 percent annual interest "computed from the date that is twenty days after the date of judgment or the date that is *ninety days after the date of verdict, whichever is earlier* . . . ." (Emphasis added.) General Statutes § 37-3b (a). The only way for January 26, 2017, to have been the "earlier" date, of course, would be if judgment had not yet been rendered at the time of the plaintiff's motion, as the plaintiff's pleading suggests. If judgment had been rendered on the day of the verdict (October 28, 2016), as the trial court ultimately ruled, November 17, 2016, would have been the "earlier" date (twenty days after the judgment). The plaintiff's own confusion over when judgment was rendered for purposes of calculating interest certainly is consistent with the defendants' confusion in determining the correct appeal period.

B

Because there is a need for bright lines in applying

our rules, I agree with the majority that the defendants filed their appeal past the appeal deadline, as the majority determines it to be. But the record reflects more than a modicum of confusion (including on the plaintiff's part) about when the judgment became final or whether the appeal period was tolled, which I find reasonable in light of the state of the law at the time the verdict was returned. The plaintiff's motion triggered ongoing proceedings in the trial court, and the parties had been in court together just eight days before the defendants filed their appeal. After the trial court ruled on the plaintiff's motion regarding the proper application of the two interest statutes in play, the defendants appealed promptly (within four days). Neither the plaintiff, the Appellate Court nor the majority suggests that the defendants' arguments that they filed timely are frivolous or that they filed the late appeal in bad faith. Moreover, the plaintiff did not argue that she would have suffered any prejudice or undue delay from the granting of permission to file a late appeal beyond the delay normally associated with a timely filed appeal. See footnote 15 of this opinion. I would hold that it must weigh heavily in an appellate court's determination of whether "good cause" justifies permitting a late appeal when a party has delayed filing an appeal when there is an objectively reasonable basis for confusion, uncertainty or mistake about when the appeal period has run or whether the appeal period has been tolled. In the present case, such good cause existed, and it was an abuse of discretion by the Appellate Court to fail either to consider this good cause or to weigh it properly in light of the absence of any other factors justifying the court's denial of the defendants' motion for permission to file a late appeal.

In contrast, the majority holds that, although "good cause" may arise from an objectively reasonable mistake of law, the defendants' confusion in the present case was not reasonable. Unlike the situation in *Alliance Partners*, *Inc.*, in which the appellant could easily have looked at a treatise to determine the last day for filing an appeal, in the present case, this court had to clarify the law to determine when the appeal period began and whether it was tolled. Moreover, *Lucisano* v. *Lucisano*, 200 Conn. 202, 206, 510 A.2d 186 (1986), on which the majority relies for the proposition that a mistake of law regarding the date of judgment does not compel the granting of permission to file a late appeal, is plainly distinguishable from the present case. *Lucisano* did not involve an arguable mistake of law regarding the date of judgment or a tolling of that judgment for appeal purposes. Rather, the plaintiff in *Lucisano*, not recognizing that the trial court had not incorporated a provision of the parties' separation agreement into the judgment of legal separation, attempted to include in his appeal of a ruling more than two years later a challenge to the trial court's error, claiming that the issue

was not apparent to him at the time. Id., 205–206. This court held that "[t]he fact that the need for an appeal may not have been evident until after the mandated filing period passed is not a circumstance that impels us to bypass the requirements of our rules of practice." Id., 206. We did not have reason to address whether a reasonable mistake of law regarding the date of judgment compels the court to grant a motion to file a late appeal when no other factors weigh against granting the motion.

The majority suggests that, "[a]lthough there was no prior appellate decision holding that [Practice Book] § 63-1 (c) (1) *does not* apply to this type of motion, the absence of a case directly on point, although something that the Appellate Court could consider, does not mean that there was 'confusion' in the law to such an extent as to render the Appellate Court's refusal to hear a late appeal a manifest abuse of discretion." (Emphasis in original; footnote omitted.) Text accompanying footnotes 16 and 17 of the majority opinion. We do not know, of course, whether, in exercising its discretion, the Appellate Court in fact considered that there was an absence of a case on point. Nor, in my view, is the question of whether, objectively speaking, there was uncertainty in the law at the time a matter on which we should appropriately defer to the Appellate Court. Rather, given the barren state of the law in light of the record before us, I would conclude that there was objectively reasonable, good faith confusion sufficient to constitute good cause and that the Appellate Court abused its discretion by denying the defendants permission to file a late appeal.

IV

If my position appears lenient to the objective observer, this does not derive from my own charitable spirit. Rather, I take my cues from several legal and policy declarations, including from our case law and rules of practice.

First, the legislature has provided litigants with a statutory right to appeal. See General Statutes §§ 51-197a and 52-263. Although time deadlines in our rules of practice are important, they are not statutory and therefore not a jurisdictional condition of this right. See *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 604, 181 A.3d 550 (2018); *LaReau* v. *Reincke*, 158 Conn. 486, 493–94, 264 A.2d 576 (1969). The twenty day time period in Practice Book § 63-1 (a) for filing an appeal is not mandatory. See, e.g., *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 103, 900 A.2d 1242 (2006). It is directory: Intended to encourage "dispatch in the proceedings . . . ." (Internal quotation marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, supra, 598.[13] Also, although a condition of the right to appeal is that the judgment is "final," it has been left to the courts (and, principally, this court) to

flesh out what "final" means. In certain contexts, we have done that with only a modicum of success. See, e.g., *U.S. Bank National Assn.* v. *Crawford*, 333 Conn. 731, 738, 219 A.3d 744 (2019) (discussing "doctrinal confusion" over final judgment rule in application); see also id., 760 (*McDonald*, *J.*, dissenting) (discussing "murky state of our final judgment jurisprudence").

Clearly, our appellate courts have discretion to permit the late filing of any documents, including appeals. See Practice Book §§ 60-1 and 60-2 (5). This discretion, as in all appellate rules of practice, is to be applied consistent with the very first provision in our appellate rules of practice, which directs: "The design of these rules [of appellate procedure] being to facilitate business and advance justice, they will be interpreted liberally in any appellate matter where it shall be manifest that a strict adherence to them will work surprise or injustice." Practice Book § 60-1. Finally, we have articulated a considered preference for having cases decided on their merits, rather than by the enforcement of nonjurisdictional rules. See, e.g., *Coppola* v. *Coppola*, 243 Conn. 657, 665, 707 A.2d 281 (1998) ("[o]ur practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure" (internal quotation marks omitted)). I do not agree that, when a litigant presents a nonfrivolous reason for confusion over when it must file an appeal, our justice system does not afford that litigant the grace to file a late appeal when that litigant's judgment turns out to be wrong and no other factors except for docket control justify the denial of permission to file a late appeal. Although we do indeed afford a good deal of discretion to the Appellate Court in managing its docket, a policy of docket control that does not account for good faith, but mistaken, interpretations of the rules does not in my view constitute an appropriate exercise of that discretion. Instead, a policy of docket control in the absence of such countervailing factors, such as prejudice and undue delay, merely constitutes another way of enforcing a de facto jurisdictional appeal period where the legislature has prescribed none.[14]

The holding in the present case means that these defendants accidentally forfeited their statutory right to appeal a $4.2 million judgment against them for malpractice. The size of this verdict has absolutely nothing to do with my view, just as I am confident it has nothing to do with the majority's or the Appellate Court's considered views. When an objectively reasonable but mistaken understanding of the rules or the case law leads to a late filed appeal, this result would have to be the same whether the appellant were plaintiff or defendant, or a juvenile, criminal or family litigant. I find this inflexibility inconsistent with our rules of practice, which are designed to advance justice. In my view, the complete

forfeiture of a party's legislatively provided right to appeal under these circumstances is wildly out of proportion to any procedural violation in the case. Cf. *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, 328 Conn. 60, 71, 176 A.3d 1167 (2018) (sanction of nonsuit must be proportionate to violation); *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001) (same).[15]

If the answer to my point of view is that, only by enforcing the rules strictly—or, in this case, allowing the Appellate Court to do so—do we have any hope of securing compliance with those rules, count me as doubtful. Mistakes happen. Misjudgments, too. I do not recognize a system of justice that does not tolerate the potential for imperfection. Rather, this court "eschew[s] a mechanistic interpretation of our appellate rules in recognition of the fact that an unyielding policy requiring strict adherence to an appellate time limitation—no matter how severe or unfair the consequences—does not serve the interests of justice." (Internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 213–14. "It is the courts, the legal profession and the public generally, not just the plaintiffs, who are the losers when serious cases like this one fail to be resolved on their merits because of some procedural deficiency." *Hughes* v. *Bemer*, 200 Conn. 400, 405, 510 A.2d 992 (1986) (*Shea, J.*, dissenting).[16]

Nor do I believe that, when there is objectively reasonable confusion over an appeal deadline, parties—counseled or otherwise—will be less careful if my view were to prevail because they can rely on an appellate court to entertain and grant a motion to file a late appeal. That is a dangerous game. Litigants have a great incentive to interpret rules correctly in the first instance. I see no floodgates of late appeals bursting open if appellate courts were to take account of such confusion when considering whether to permit late appeals.

Finally, I do not believe a malpractice action is the answer if an attorney were responsible for the mistake in the present case or in an analogous case. Demonstrating causation or prejudice under such circumstances (i.e., the appeal would have succeeded) is practically impossible. See *Bozelko* v. *Papastavros*, 323 Conn. 275, 284, 147 A.3d 1023 (2016) ("the plaintiff must prove that, in the absence of the alleged breach of duty by her attorney, the plaintiff would have prevailed [in] the underlying cause of action and would have been entitled to judgment" (internal quotation marks omitted)). Moreover, I do not believe that creating the need for another case in our court system "advances justice."

Accordingly, I respectfully concur in part and dissent in part.

[1] Although Jenniyah Georges also is a plaintiff, in the interest of simplicity,

we refer to Maria Leoma as the plaintiff throughout this opinion.

[2] General Statutes § 52-192a (c) provides in relevant part: "After trial the court shall examine the record to determine whether the plaintiff made an offer of compromise which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain specified in the plaintiff's offer of compromise, the court shall add to the amount so recovered eight per cent annual interest on said amount . . . . The interest shall be computed from the date the complaint in the civil action or application under section 8-132 was filed with the court if the offer of compromise was filed not later than eighteen months from the filing of such complaint or application. If such offer was filed later than eighteen months from the date of filing of the complaint or application, the interest shall be computed from the date the offer of compromise was filed. . . ."

General Statutes § 37-3b (a) provides in relevant part: "[I]nterest at the rate of ten per cent a year, and no more, shall be recovered and allowed in any action to recover damages for injury to the person, or to real or personal property, caused by negligence, computed from the date that is twenty days after the date of judgment or the date that is ninety days after the date of verdict, whichever is earlier, upon the amount of the judgment."

[3] The trial court indicated that the docket "entry of 'judgment on verdict for plaintiff' entered by the courthouse clerk on November 28, 2016," did not "intend to indicate that the date of judgment was November 28, 2016 . . . ." This was a "misimpression [that] shall be corrected." Under the plaintiff's theory—confirmed by this court's decision today—the defendants' appeal was already twenty-five days late at this belated point of clarity.

[4] The trial court awarded the plaintiff $1,639,496.55 in offer of compromise interest (8 percent), which it determined ran from the date the complaint was filed to the date judgment entered. It also awarded postjudgment interest, to be calculated at 10 percent per year, beginning twenty days from the date of judgment. Thus, under the trial court's order, interest did not run under either theory during the twenty day appeal period. The plaintiff had argued that offer of compromise interest should run from the date the complaint was filed to ninety days following the return of the jury verdict and that postjudgment interest should run from the ninety days following the date of the verdict so that there was no break in the interest.

[5] The defendants' preliminary statement of issues indicated that the defendants intended to raise on appeal a claim that the trial court had improperly admitted certain expert testimony and provided the jury with an incorrect instruction on damages.

[6] For example, the majority states: "Although there was no prior appellate decision holding that [Practice Book] § 63-1 (c) (1) *does not* apply to this type of motion, the absence of a case directly on point, although something that the Appellate Court could consider, does not mean that there was 'confusion' in the law to such an extent as to render the Appellate Court's refusal to hear a late appeal a manifest abuse of discretion." (Emphasis in original; footnote omitted.) Text accompanying footnotes 16 and 17 of the majority opinion. I will address whether it is appropriate to conclude that the Appellate Court abused its discretion. It is enough for now to point out that we have no idea whether the Appellate Court considered the absence of on point case law or whether it simply enforced deadlines in an uncompromising fashion. Either way, I would conclude that the Appellate Court abused its discretion. Either it did not consider this issue, which should have factored into its decision, or it incorrectly determined that there was not objectively reasonable, good faith confusion.

[7] To cite just two examples, we have explained the need to defer to a trial court's rulings on evidence and awards of attorney's fees because the trial court is in the unique position of having conducted the trial. See, e.g., *State* v. *Collins*, 299 Conn. 567, 593 n.24, 10 A.3d 1005 ("the abuse of discretion standard reflects the context specific nature of evidentiary rulings, which are made in the heat of battle by the trial judge, who is in a unique position to [observe] the context in which particular evidentiary issues arise and who is therefore in the best position to weigh the potential benefits and harms accompanying the admission of particular evidence" (internal quotation marks omitted)), cert. denied, 565 U.S. 908, 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011); *Bobinski* v. *Kalinowski*, 107 Conn. App. 622, 628–29, 946 A.2d 283 ("'we may not alter an award of attorney's fees unless the trial court has clearly abused its discretion, for the trial court is in the best position to evaluate the circumstances of each case' "), cert. denied, 289 Conn. 919, 958 A.2d 150 (2008). Thus, I find distinguishable the cases the

majority cites, such as *State* v. *Holley*, 327 Conn. 576, 628, 175 A.3d 514 (2018), which reviewed trial court rulings for abuse of discretion.

[8] Section 52-192a (c) contains no mention of either the need for a motion or a time period for a motion for offer of compromise interest to be filed. Instead, it directs the trial court to "examine the record to determine whether the plaintiff made an offer of compromise which the defendant failed to accept." General Statutes § 52-192a (c). If the plaintiff "has recovered an amount equal to or greater than the sum certain specified in the plaintiff's offer of compromise, the court shall add to the amount so recovered eight per cent annual interest on said amount . . . ." General Statutes § 52-192a (c). Conventionally, counsel often file a motion to assist the trial court with the math.

[9] See footnote 11 of this opinion.

[10] It is true that Practice Book § 17-2 provides that, if no motions pursuant to Practice Book §§ 16-35 and 17-2A are filed, the date of the judgment "shall be the date the verdict was accepted." Section 63-1 (b) provides similarly, pertaining to how notice of a judgment or decision is given. These provisions beg the question, as they do not purport to countermand Practice Book § 63-1 (c), concerning how the filing of certain motions creates a new appeal period.

[11] Before 1997, interest pursuant to § 37-3b was discretionary, not mandatory. The statute was amended by Public Acts 1997, No. 97-58, § 2. Although the amended version of § 37-3b was not at issue in *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 310 Conn. 38, 54, 74 A.3d 1212 (2013), we indicated in that case that this amendment made awards of interest under § 37-3b mandatory on the basis of the legislature's replacement of the term "may" with the term "shall." Id., 42 n.5. Although this court has interpreted this amendment to require an award of interest; id., 48; we have not addressed whether the rate of interest awarded must be 10 percent. The Appellate Court has previously interpreted a similar rate of interest provision to provide the trial court with discretion in setting the interest rate and then determined that this discretion meant that the judgment was not final until the trial court set the interest rate. See *Nolan* v. *Milford*, 86 Conn. App. 817, 819, 862 A.2d 879 (2005) (trial court retained discretion to determine prejudgment interest rate under General Statutes § 37-3a, as long as rate was 10 percent or lower, where statutory interest rate was set at "ten per cent a year, and no more").

[12] "Threading the needle" under *Nolan*, the defendants might even have had the better argument on this score. In light of the majority's opinion on this final judgment question, which I join, *Nolan* now seems to be of doubtful precedential value or, at least, should be confined precisely to the facts of that case.

[13] The plaintiff benefited from similar maxims in this very case. The defendants claimed that the plaintiff's offer of compromise was defective because it cited to the wrong section of our rules of practice. They argued that the trial court should strictly construe the applicable provision of the rules of practice and not award the plaintiff any interest under § 52-192a (c). The plaintiff responded that there was no mandatory rule requiring citation to the rules of practice but, rather, that the rule was directory and that the failure to comply with this directory rule was not fatal, as long as the pleading provided the defendants with sufficient notice. The defendants' argument did not persuade the trial court, and the Appellate Court rejected it in a memorandum decision. See *Georges* v. *OB-GYN Services, P.C.*, supra, 182 Conn. App. 901.

[14] Both the plaintiff and the majority point out that the defendants could have avoided this predicament in a number of ways. Of course, they could have recognized the final judgment and filed a timely appeal, notwithstanding the plaintiff's motion for interest, within the appeal period. They also could have moved to extend the time within which to file an appeal. Or, if there were any doubt, they could have appealed multiple times, as some commentators suggest, and "let the appellate court judges sort [it] out . . . ." W. Horton & K. Bartschi, supra, § 61-1, p. 84, authors' comments; see also E. Prescott, Connecticut Appellate Practice and Procedure (5th Ed. 2016) § 4-2:6.2e, p. 245. Putting aside that hedging your bets and following the "appeal early and often" approach burdens both our clerks' offices and the opposing party, the defendants obviously wish they *had* taken one of these actions. But that these options would have been more prudent is simply a truism. If all litigants managed to navigate our final judgment case law and our rules of practice successfully, and always filed their appeals timely, there would be no need for a provision permitting the filing of late documents,

including appeals, and no need for an appellate court to exercise its discretion to permit late filings. See Practice Book §§ 60-2 and 60-3. The question is whether good cause exists to permit a late appeal when an appeal is *not* timely filed.

[15] I am not indifferent to delay in appellate filings. It is possible that, in some cases, a three week delay in filing an appeal might in fact constitute prejudice. In the life of an appeal, that would be a very unusual case, where preargument conferences are scheduled and rescheduled and litigants are (appropriately) afforded extensions of time to file—or correct the filing of— every other document that our rules require. When measured against the forfeiture of a statutory right to appeal, and in consideration of the uncertainty in our final judgment law and the lack of expressed prejudice to the plaintiff, who took no steps in reliance on there *not* having been an appeal, three weeks delay is not significant.

[16] This court has come a long way since the days of *Hughes* v. *Bemer*, supra, 200 Conn. 400, *Simko* v. *Zoning Board of Appeals*, 206 Conn. 374, 538 A.2d 202 (1988), and *Burton* v. *Planning Commission*, 209 Conn. 609, 553 A.2d 161 (1989). Both this court and the legislature have since acknowledged that "an overly strict adherence" to procedural requirements "would result in unnecessary unfairness." (Internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 768, 900 A.2d 1 (2006).